## THE PASSAIC.

## THE SLATINGTON.

## THE BARGES PRR 472, 425.

### No. 17401.

District Court, E. D. New York.

Nov. 26, 1946.

Burlingham, Veeder, Clark & Hupper, of New York City, (George R. Wagner, of New York City, of counsel), for libellant.

Foley & Martin, of New York City, (Louis J. Lawrence, of New York City, of counsel), for Tug Passaic.

Pyne & Lynch, of New York City, (Warner Pyne, of New York City, of counsel), for Tug Slatington.

INCH, District Judge.

Libellant, the Pennsylvania Railroad Company, owned barges P.R.R. Nos. 472 and 425, and alleges that through the negligence of the tug Passaic, (Mathiasen Harbor Company, Inc., claimant) and the tug Slatington, (Lehigh Valley Railroad Company, claimant) libellant's barges were damaged. Answers were interposed and the trial came on before this court of admiralty.

As usual in such cases, the important thing here is to find the facts, and, when this has been done, it plainly shows to the court that the tug Passaic was careless and that the tug Slatington neither contributed to the accident nor was negligent.

Briefly, November 29, 1943 was a clear day on the East River, New York City. The tide, at the time in question, was ebb, a light wind was blowing from the northeast down the river, off Pier 17. At the end of this Pier 17 were four loaded covered barges, in the following order from the pier towards the stream, Lehigh Valley No. 3, Lehigh Valley No. 73, P.R.R. 425 and P.R.R. 472. This was about 2:30 in the afternoon.

The tug Passaic is a small shifting tug, employed around Pier 15, East River. About this time, the Passaic received orders to go to Pier 17 and take out a B. & O. barge No. 12 and bring that barge to Pier 15. The Passaic proceeded to do this, but, in taking the B. & O. barge out from Pier 17, it carelessly caused said barge to collide with the above named four barges quietly moored at the end of Pier 17, parting the up-river line which the Lehigh Valley No. 3, the barge nearest to the pier, had out to the pier. This caused the four barges to swing around on the other line that the Lehigh No. 3 had out to Pier 17 and these four barges then brought up in the slip between Pier 17 and Pier 16 and in a sense a reversed order of these four barges.

The Passaic made no effort to properly remoor the barges and its negligence, in breaking this flotilla adrift, was the initial fault that set in motion that which followed. The Brinton, D.C., 35 F.2d 543; In re Pennsylvania R. Co., 2 Cir., 48 F.2d 559.

Instead of performing this duty to use due care to remoor these four barges, which it had left swinging on but one line from the Lehigh No. 3, the Passaic proceeded with the said B. & O. barge to Pier 15 and tied her up there. This reversal of order in which the four barges previously lay brought the Lehigh No. 3, the outermost of the four next to Lehigh No. 73, the Pennsylvania barges now being the nearest to Pier 16.

While the Passaic was down at Pier 15, the tug Slatington arrived at Pier 16 about 2:30 P.M. with orders to take the Lehigh No. 3 and the Lehigh No. 73 away. Their lines to the Pennsylvania barges were duly taken off and the Slatington simply towed the Lehigh No. 3 into the slip on the north side of Pier 17 and then took the Lehigh No. 73 away to a pier in the North River. This maneuver by the Slatington in no way made the situation unsafe for the two Pennslyvania barges alongside Pier 16, and very possibly if they had been allowed to remain where they were it might have been comparatively safe. The lines of a steamship nearby were indeed close to one of these barges, but not so as to make the position of the Pennslyvania barges dangerous.

Accordingly, I find no liability whatever on the part of the tug Slatington.

The Passaic then returned to Pier 16 and proceeded to pull the Pennsylvania barges Nos. 472 and 425 out from inside this slip until the end of these barges extended 10 or 12 feet into the river beyond the end of the pier. The captain of the P.R.R. No. 472 was ordered to shift his line to a cleat on the outer end of Pier 16 and the Passaic then again left and did not return. The ebb tide then swung these two Pennsylvania barges around, parted the line to the cleat on the end of Pier 16, as well as another line which the barge captains had hurriedly put out when they felt themselves swinging, which line broke with such force as to injure one of these barge captains, who had gone on to the pier in this effort to hold the barges, and the two Pennsylvania barges then drifted down the river into collision and damage.

This second action of the Passaic in pulling these Pennsylvania barges out into the stream was plainly careless, for, in doing so, it was or should have been apparent to the master of the Passaic that there was grave danger, in view of all the plain circumstances, that these two barges would again swing down the river. Instead of using reasonable care, he left them there in this dangerous and exposed place.

The above facts indicate that liability for the damages sustained by the Pennsylvania barges was due solely to the negligence of the Passaic, which first broke the line of the Lehigh Valley No. 3, causing the four barges to swing down and then, in the absence of the Lehigh Valley Nos. 3 and 73, again placing the Pennsylvania barges in a dangerous position, which this time ended up in serious damage to these barges.

Libellant is entitled to a decree against the Passaic and her claimant. The libel is dismissed against the Slatington and her claimant.

Submit findings of fact and conclusions of law.